## Erlanger Citizens Bank v. Williams.

May 13, 1941.

494

Wm. A. Armstrong and O. M. Rogers for appellant.

Lawrence S. Poston and Ray Stephenson for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Affirming.

The Erlanger Citizens Bank, by W. H. Folmer, special deputy banking and securities commissioner, sued H. O. Williams to recover a balance of $1,180.11 and interest on a note. Several defenses were made but there has come to this court only the question of the propriety of a peremptory instruction to a jury on the issue of negligence of the plaintiff resulting in the loss of the value of a promissory note which Williams had pledged to the bank as security for his own note. Williams has successfully maintained that if the bank's representative had exercised due diligence he could have collected the collateral note and his failure to do so having resulted in its loss, he, Williams, was released from liability on his own note.

A special property in the thing pledged vests in the pledgee and he is a holder for value to the extent of the amount for which it is pledged. 21 R. C. L. 649, 660. The right which a pledgee ordinarily has to sell the

pledged property upon nonpayment of the debt does not exist where it is a promissory note, in the absence of an express agreement, because such paper has no established market value and must generally be sold at a sacrifice, there being no presumption that it was the intention of the parties thus to deal with it. Jones on Collateral Security, Section 651; Shindler v. Hayden's Adm'r, 8 Ky. Law Rep. 859. The pledgee is therefore under a duty to the pledgor to enforce its collection. 21 R. C. L. 666; 8 Am. Jur., Bills and Notes, Section 939. It is a rule of general acceptation that where a party receives a note as collateral security, he must use ordinary diligence to collect it, and, if loss should occur to the debtor by reason of the pledgee's failure to do so, he is liable to the debtor for the loss. This rests upon an implied contract (where there is no special agreement) that the pledgee will observe good faith and diligence in respect to its collection. If he is guilty of laches resulting in damages to the pledgor, he makes the paper his own and must account to his debtor on the principal debt for the sum which he could have made by pursuing the maker of the collateral paper with ordinary diligence. Bonta v. Curry, 66 Ky. 678, 3 Bush 678; Noland v. Clark, 49 Ky. 239, 10 B. Mon. 239; Shindler v. Hayden's Adm'r, supra; Day v. Kenton, 62 S. W. 3, 22 Ky. Law Rep. 1917; Roberts v. Farmers' Bank, 118 Ky. 80, 80 S. W. 441; Hamilton's Ex'r v. Hamilton, 84 S. W. 1156, 27 Ky. Law Rep. 298; Menser v. Lea, 176 Ky. 391, 195 S. W. 813; Hudson & Co. v. Wood, 183 Ky. 16, 208 S. W. 2; Jones on Collateral Security, Section 692; 49 C. J. 1021; 21 R. C. L. 667.

With this outline of the law in mind, we look at the evidence. The plaintiff's debt was a demand note originally for $1,460, executed in October, 1931. On December 9, 1931, Williams paid $200 on it and endorsed and pledged to the bank as collateral a certain $400 note with which we are not concerned on the appeal, and a $1,200 note executed by Edward C. Wendt to Williams which matured April 9, 1932. The bank was placed in the hands of the State Banking Department for liquidation on January 7, 1932. The deputy banking commissioner in charge called upon Wendt to pay his note and he drew attention to the fact that it was not due. The note bears endorsement of payment of $36 interest on June 9, 1932, and $12 interest on August 9, 1932, which sums were

credited on Williams' note to the bank. Though quite indefinitely, it appears that in response to a notice of maturity Wendt stated, ''he felt that he was unable to do very much about it.'' There were several successive liquidating agents, the first of whom had died. None of these officers did anything toward collecting the note until some time in August, 1933, when it was turned over to the attorney for the deputy banking commissioner. His investigation then made appears to have been the first for or on behalf of the liquidating agent of the bank. The attorney testified that he then found Wendt to be insolvent.

For more than fifty years Wendt had conducted the largest retail hardware store in Newport. There is an estimate in the record that as late as 1932 his stock of merchandise was worth $30,000 to $40,000. He had been offered $55,000 for his business property in 1928 or 1929. It was subject to a lien of $17,000. Wendt began having financial difficulties early in 1932, but it is undenied that he was able to pay his current bills until about the beginning of 1933. It appears that from 1931 on Wendt, who was then about 80 years old, began investing considerable money in some kind of oil company stock venture, and was fleeced to the extent of about $30,000. He was continually relying upon promises of great profit and appears to have been able to raise cash to put into this venture as called upon. There is evidence tending to show that he was insolvent in the sense that had all his creditors closed down on him at once he could not have paid out. This was in 1932 and 1933, particularly in the latter year. Some wholesale merchants refused to extend further credit and he paid them in cash. No suit was filed by any one against Wendt to enforce the collection of any debt except by Belknap Hardware & Manufacturing Company, who sued him in February, 1933, for $1,680. Judgment was rendered and on May 4, 1933, an execution was levied on the stock of merchandise. On that day Wendt made an assignment for the benefit of his creditors. Meanwhile, the holder of the mortgage on the building obtained a foreclosure judgment on June 10, 1933. The building was appraised at $25,000, but the mortgagee bought it for its debt. Wendt was adjudged a bankrupt October 9, 1933. He listed Williams as a creditor and Williams testified he mailed to the bank the notice of the bankruptcy sent him. Still

the liquidating agent did nothing. He asserted no claim against the bankrupt estate. It paid 18.9 cents on the dollar to the creditors who made claims. In the same ratio $226.80 could have been realized on the Williams note.

Let us look at the law particularly applicable. The responsibility of the pledgee is not determinable by the strict rules of law applicable to negotiable paper but rather by the general principles of the law of agency. Jones on Collateral Securities, Section 700; Bonta v. Curry, supra. What constitutes negligence in the collection of collateral security is, of course, a question of fact and is to be decided by a jury where the evidence is contradictory, or different inferences may be reasonably drawn. Of course, the circumstances of each case are to be considered in determining the question of negligence. In the case at bar there existed more than the duty generally owing in such instances, for the statute imposed upon the liquidating agent the duty of proceeding expeditiously to reduce the assets of the bank to cash and distribute them. Section 165a-17, Kentucky Statutes; Collopy v. Dorman, 250 Ky. 513, 63 S. W. (2d) 610. The most that the evidence opposing that of the defendant, who had the burden of proving negligence, consisted of opinions that Wendt was insolvent in 1932, especially in the latter part, and that action by the bank to enforce collection would have precipitated bankruptcy. But insolvency, though an important factor, is not conclusive of an inability to collect, "for the reason that the maker may pay this particular debt, although he is unable to pay all his debts." Section 699, Jones on Collateral Securities. No witness testified that the bank could not have collected the debt. The undisputed facts are that Wendt was finding money to pay cash for purchases of merchandise and to put into his unfortunate speculation; and that a later creditor, for a debt $500 larger, succeeded by exercising ordinary diligence to collect its debt, while the liquidating agent of the bank did nothing. He could have proceeded in the same way more than a year before the Belknap Company did. The value of the merchandise stock far exceeded that debt even measured by a forced sale at that time. The same is true as to his building. This was a case, we think, where not only the statutory duty of the deputy banking commissioner required that suit be brought to enforce the

collection but likewise the general duty of a pledgee or its representative to exercise ordinary diligence, for where there is danger of insolvency it is his duty to bring suit without delay. Bonta v. Curry, supra. 49 C. J. 1024. The facts do not bring the case within the rule that suit is not required where it would be a mere futility. 49 C. J. 1024. The fact that a year and a half after maturity of the note the maker's bankrupt estate—with all the factors of sacrifice and cost involved—paid substantially 19 cents on the dollar to general creditors except the pledgee, who did not bestir himself to file a claim as was his duty, is persuasive that had the bank's representative moved to collect the note when it matured he could have realized the full amount. 49 C. J. 1024. We have a very similar state of facts in Hamilton's Ex'r v. Hamilton, supra. There were two notes made by the same obligor, one of which was held by the payee and collected by him through suit. The other note had been endorsed and delivered by the payee to a third party as collateral security. The pledgee for a period of three years delayed instituting suit to collect the note and there was a total loss. The pledgee was held liable to the pledgor for the amount of the note on account of his negligence. While that case was decided by a chancellor in the settlement of an estate, this court had no difficulty in confirming his finding of fact that there was negligence, principally because one note was collected by seasonable action and it was not shown the other could not also have been collected.

We are of opinion that while there was a scintilla of evidence affording a reasonable inference to the contrary, it was not sufficient to submit the case to the jury and the court was justified in holding as a matter of law that the several successive liquidating agents of the bank did not act in good faith, legally speaking, with its debtor, and did not exercise ordinary diligence to collect the collateral security, which negligence resulted in its loss in an amount equal to the debt.

Judgment affirmed.

Whole court sitting.